UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Darryl Donail Walker, Sr.,                              Case No. 22-cv-1595 (WMW/LIB)

                    Petitioner,

    v.                                                  **REPORT AND RECOMMENDATION**

Guy Bosch,

                    Respondent.

---

This matter comes before the undersigned United States Magistrate Judge pursuant to a general referral for report and recommendation in accordance with the provisions of 28 U.S.C. § 636 and Local Rule 72.1, as well as, upon Petitioner Darryl Donail Walker, Sr.'s ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [Docket No. 1].

For the reasons set forth herein, the Court recommends that the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED**, and this action be **DISMISSED** with prejudice.

## I.    Background

In 2019, Petitioner was charged with first-degree sale of methamphetamine, first-degree possession of methamphetamine, and failure to affix a tax stamp. See State v. Walker, No. A21-0256, 2022 WL 274732, at *1 (Minn. Ct. App. Jan. 31, 2022), review denied (Apr. 27, 2022). During his criminal pretrial proceedings, Petitioner underwent two competency evaluations. Id. Specifically, by court order dated December 27, 2019, and pursuant to Minnesota Rules of Criminal Procedure 20.01, 20.02, and 20.04, Petitioner was examined, and it was determined that he was not competent to stand trial. (See Rule 20.01 Report, Respondent's Ex. 2, [Docket No. 13-2], at p. 1). However, after an objection was filed, Petitioner underwent a second Rule 20.01 examination, which found that Petitioner was competent to stand trial, specifically providing that

he had "the ability to rationally consult with counsel, understand the legal proceedings, and participate in his defense." (Id. at p. 17). Petitioner ultimately agreed to plead guilty to first-degree sale of methamphetamine in exchange for the State to dismiss the additional charges and to recommend a maximum sentence of 240 months imprisonment. See Walker, 2022 WL 274732, at *1.

A plea hearing was conducted in September 2020. Id. At that hearing, Petitioner discussed the underlying facts with his attorney and prosecutor. Id. Petitioner appeared to challenge whether he knew the nature of the substance he was delivering; whether he intended to sell the methamphetamine he was delivering; and whether he was to receive $1,800 in return for delivering the drugs to an individual later identified as an undercover police officer. Id. at *1-2. However, after being questioned by the prosecutor, Petitioner ultimately admitted that he knew the substance was methamphetamine, and he agreed that, whether or not he was to receive money in return for the delivery, he was guilty of possession with intent to sell methamphetamine. See Walker, 2022 WL 274732, at *2. The prosecutor confirmed Petitioner's understanding of his trial rights, the sentence he faced, and the plea agreement. Id. The district court accepted Petitioner's guilty plea. Id.

In advance of the sentencing hearing, the prosecutor submitted a Sentencing Memorandum, seeking an upward durational departure from the sentencing guidelines on the basis that Petitioner was a "dangerous offender" under Minn. Stat. § 609.1095, subd. 2. Id. As part of his Sentencing Memorandum, Petitioner's attorney requested the presumptive sentence of 105 months. Id. Thereafter, the state district court sentenced Petitioner to 180-month prison sentence, finding that Petitioner was a "'dangerous offender' who is 'a danger to public safety' due to his history of violent crime." See Walker, 2022 WL 274732, at *2.

Petitioner appealed his conviction to the Minnesota Court of Appeals "arguing that his guilty plea [was] invalid, [that] he received ineffective assistance of trial counsel, and [that] the prosecutor committed misconduct during sentencing." Id. at *1.

In support of his argument that his guilty plea was invalid, Petitioner asserted that "he [had] made statements that negated two essential elements of the offense in question"—"(1) knowledge that the substance in his possession was a controlled substance" because he stated that "he 'didn't even think [the methamphetamine] was real'" and "(2) intent to sell that substance" because, despite admitting to having the required intent during the plea hearing, his statements were made as a result of "'highly leading questions' and were made begrudgingly.'" Id. at *3. The Minnesota Court of Appeals, ultimately rejected Petitioner's arguments regarding the invalidity of his guilty plea because: 1) although he suggested during his plea hearing that he had no knowledge that the item in his possession was methamphetamine, the court found that Petitioner's numerous statements thereafter "established that he had actual knowledge of the nature of the substance"; and 2) although the prosecutor asked Petitioner multiple leading questions, which is generally discouraged, Petitioner's admissions during the plea hearing were nevertheless sufficient to establish guilt of first-degree sale of methamphetamines. Id. at *4.

Petitioner also argued that he received ineffective assistance of trial counsel because: 1) his counsel failed to request a third competency evaluation to challenge the finding that he was found competent; and 2) his counsel's Sentencing Memorandum "presented 'mitigating factors, but cited no caselaw, statutes, or any rulings that would be in favor of [Petitioner's] mitigating favors [sic].'" Id. The Minnesota Court of Appeals ultimately rejected each of Petitioner's arguments, finding that, in sharing the duty to protect Petitioner's right not to be tried or convicted while incompetent, "[n]either the prosecutor, the defense attorney, nor the judge raised any

concerns about [Petitioner's] competence following the second evaluation," and a review of court transcripts revealed that Petitioner appeared "lucid, logical, and responsive" during his plea and sentencing.  See Walker, 2022 WL 274732, at *5.  Further, the court found that his trial counsel's decision to include facts about Petitioner as an individual in the Sentencing Memorandum was a matter of strategy and the court could not conclude that the district court's sentencing decision would have changed if Petitioner's Sentencing Memorandum had contained legal authority citations.  Id.

Lastly, Petitioner argued that the prosecutor committed misconduct "by intentionally misrepresenting, misleading, and lying to the court about [Petitioner's] criminal record" based on the statements he made during sentencing.  Id. at *6.  Specifically, Petitioner challenged the following statements: (1) "'[Petitioner's] got eight prior felony convictions,' (2) 'of the eight, five were for violent crimes,' and (3) [Petitioner] is 'a violent thug who hurts any and everybody that gets in his way.'"  Id.  Although the appellate court found the prosecutor's repeated term-use of "'gang banger'" had "racial undertones" and "served no legitimate purpose," the court found that Petitioner failed to show that these remarks or the prosecutor's discussion of Petitioner's criminal history amounted to plain error.  Id.

After rejecting each of Petitioner's arguments, the Minnesota Court of Appeals affirmed Petitioner's conviction.  See Walker, 2022 WL 274732, at *6.

Thereafter, Petitioner sought review from the Minnesota Supreme Court.  Walker v. State, No. A21-256, Pet. for Review of Decision of Court of Appeals (Minn. Mar. 3, 2022).   In his petition for review at the Minnesota Supreme Court, Petitioner's appellate counsel framed the issue for review to be as follows:

I.    Is sentencing hearing where the prosecutor employs inflammatory, irrelevant language that is distinctly racially coded sufficient to ensure due process?

Ruling Below: The court of appeals determined that the prosecutor's repeated use of the term "gang-banger" to describe petitioner was concerning, had "racial overtones," and "served no legitimate purpose," but nevertheless concluded it did not constitute plain error.

II.    Under what circumstances is a plea procured through leading questions sufficiently accurate?

Ruling Below: The court of appeals determined that the petitioner's plea was secured using leading questions after he refused to admit certain facts and minimized his culpability, but nevertheless concluded it was accurate without indicating why.

(See Pet. for Review of Decision of Court of Appeals, Respondent's Ex. 10, [Docket No. 13]).

In summarizing his argument as to why the petition for review by the Minnesota Supreme Court should be granted, Petitioner asserted that, as to the prosecutor's improper arguments during sentencing, the "court of appeals conclusion that it did not constitute plain error is wrong" because: 1) "the plain error test should not have applied because [Petitioner's] defense attorney actually objected to the tone of [the prosecutor's] argument, although she was unwilling to expressly label it as racist"; and 2) "if [the prosecutor's] argument improperly injected race into the proceeding, there is no authority to suggest that such an appeal does not constitute plain error" as it is "impossible to know what impact this coded argument had in his sentencing proceeding." (Id. at p. 10). As to his plea being secured by leading questions, Petitioner asserted that the Minnesota Supreme Court should grant review because the court "had never articulated a framework for courts to determine whether a plea secured by leading questions is accurate." (Id. at pp. 10-11).

On April 27, 2022, the Minnesota Supreme Court denied review of Petitioner's case. Walker v. State, No. A21-256, Order (Minn. Apr. 27, 2022). Thereafter, on June 1, 2022, the

Minnesota Court of Appeals enter final judgment in Petitioner's criminal case.  Walker v. State, No. A21-256, Judgment (Minn. Ct. App. June 1, 2022).

On June 16, 2022, Petitioner initiated the present proceeding by filing his pro se Petition for writ of habeas corpus, [Docket No. 1], challenging the constitutionality of his current term of confinement.  In his Petition, Petitioner appears to assert three grounds for relief: 1) ineffective assistance of counsel; 2) prosecutorial misconduct; and 3) invalid guilty plea.  (Pet., [Docket No. 1]).  Where the form-Petition instructed Petitioner to provide the supporting facts, Petitioner wrote for his ineffective assistance of counsel claim that his counsel "admitted guilt by coercing Petitioner to [ac]cept a plea of guilty" by telling Petitioner that she would "get him . . . a sentence of 105 months"; submitted a Sentencing Memorandum "arguing mitigating factors," but failed to cite to "caselaw, statutes, rules, or documents in favor or support of [Petitioner's] mitigating factors"; and despite her belief that Petitioner was incompetent, she failed to schedule a third competency evaluation to challenge the finding that he was competent.  (Id. at pp. 5, 7; Mem. in Support, [Docket No. 5], at p. 14).   In support of his prosecutorial misconduct claim, Petitioner provided that the prosecutor "used racial stereo-type tune" because "he intentionally mis-represented, mislead, and lied, about the facts to persuade the [state D]istrict Judge to sentence [Petitioner] to [a] harsher sentence."  (Pet., [Docket No. 1], at p. 8).  Lastly, Petitioner appears to assert that his guilty plea was "not accurate, voluntary, and intelligent" because Petitioner was not competent and "denied knowing that he possessed a controlled substance and denied intending to sell it."  (Id. at pp. 5, 10).

## II.    Legal standards

"The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment

of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. "The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter, 562 U.S. 86, 91 (2011).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes the standards for this court to review a state prisoner's petition for habeas corpus relief. See Mark v. Ault, 498 F.3d 775, 782–83 (8th Cir. 2007) (holding that a federal court shall only engage in limited and deferential review of underlying state court decisions). A federal court will not grant a petition for writ of habeas corpus "unless it appears that (1) the applicant has exhausted the remedies available in the courts of the State [i.e., the exhaustion doctrine], (2) there is an absence of available State corrective process; or (3) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A)-(B); see Baldwin v. Reese, 541 U.S. 27, 29 (2004).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in the state court. In other words, a state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). The exhaustion doctrine "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." Id. at 845.

The exhaustion of State remedies requires more than the fact that the federal habeas applicant has been through the state courts. See Picard v. Connor, 404 U.S. 270, 275 (1971). When a state has a two-tiered appellate review system, as does the State of Minnesota, a prisoner must exhaust his claims at both appellate levels before presenting his claims in federal court. See

O'Sullivan, 526 U.S. at 845.  This is true even when a state does not afford a "right" to review by its highest court, but only offers an opportunity to present claims for discretionary review.  Id.

In Minnesota, state judicial law provides that a prisoner must raise all possible claims on direct appeal before proceeding to postconviction relief because Minnesota bars postconviction consideration of claims not so presented.  See State v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976) ("[W]here [a] direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief.").  The Eighth Circuit solidified the implications of the Knaffla bar to a federal habeas petition, concluding that if Minnesota courts refused to consider a claim in a Minnesota postconviction proceeding because it was not presented in the state court direct appeal, then the federal courts will heed that procedural bar.  See, e.g., Murray v. Hvass, 269 F.3d 896, 898-900 (8th Cir. 2001).  "For the federal court to enforce a state procedural bar, either the state court must have declined to reach the issue for procedural reasons or it is clear that the state court would hold the claim procedurally barred."  Clemons v. Luebbers, 381 F.3d 744, 750 (8th Cir. 2004).

"A state prisoner who fails to satisfy state procedural requirements" which result in his claim being barred "forfeits his right to present his federal claim through a federal habeas corpus petition, unless he can meet strict cause and prejudice or actual innocence standards."  Id. at 750 (citing Murray v. Carrier, 477 U.S. 493-96 (1986)); see Greer v. Minnesota, 493 F.3d 952, 957 (8th Cir. 2007); Coleman v. Thompson, 501 U.S. 722, 729 (1991).  These are narrow, extraordinary exceptions to the exhaustion requirement.  Coleman, 501 U.S. at 750.

To establish cause, a petitioner must show that some objective factor external to the defense impeded petitioner's efforts to comply with the State's procedural rule.  See Davila v. Davis, 137 S.Ct. 2058, 2065 (2017); Murray, 477 U.S. at 488.  A showing that a legal or factual basis for a

claim was not reasonably available to counsel or that some interference by officials made compliance impracticable would constitute cause. Coleman, 501 U.S. at 753 (citations omitted). Mere attorney error does not constitute cause, attorney conduct must constitute ineffectiveness, such that the conduct externalizes the problem to one of lack of counsel. Id. at 753-54. The Supreme Court has not defined "cause" with precise content, but it does exist where the basis of a claim was so novel it was not reasonably available at an earlier juncture. See Reed v. Ross, 468 U.S. 1, 13-16 (1984).

"To establish actual innocence, petitioner must demonstrate that, 'in light of all of the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley v. U.S., 523 U.S. 614, 623 (1998) (citing Schlup v. Delo, 513 U.S. 298, 327–38 (1995)). "[A]ctual innocence means factual innocence, not mere legal insufficiency. Id. (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)). This means the state can mount additional evidence that was not adduced at trial, or it can include charges it elected not to pursue if there is proof the charges were previously contemplated. Id. at 624.

Furthermore, federal courts will not review a question of federal law addressed by a state court if the state court's decision rests on a state law ground that is independent of the federal question and adequate to support the judgment. See Greer, 493 F.3d at 957 (citing Coleman, 501 U.S. at 729 (1991)).

Even when a prisoner's claim has been fully adjudicated and exhausted in state court, a federal court still may not grant habeas relief unless the state court adjudication:

(1)    Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court; or

(2)    Resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair minded jurists could disagree on the correctness of the state court's decision." <u>Woods v. Etherton</u>, 136 S. Ct. 1149, 1151 (2016) (quotations and citations omitted); <u>see</u> <u>Nash v. Russell</u>, 807 F.3d 892, 896 (8th Cir. 2015).

## III.    Discussion[1]

Liberally construing Petitioner's pleading in his favor,[2] he appears to allege three separate grounds for relief in support of his habeas petition. First, Petitioner raises an ineffective assistance of trial counsel claim, arguing that his trial counsel was constitutionally ineffective because: 1) she failed to schedule a third competency hearing to challenge a finding that Petitioner was competent; 2) she "coerced" him to enter into a plea agreement by promising him a sentence of no more than 105 months imprisonment; 3) and she failed in the Sentencing Memorandum to cite to "caselaw, statutes, rules, or documents" to support Petitioner's mitigating factors. (<u>See</u> Pet., [Docket No. 1], at pp. 5-7). Second, Petitioner argues that the prosecutor engaged in misconduct by "us[ing] racial stereo-type tune" and "intentionally mis-represent[ing], mis-lead[ing], and [lying] about the facts . . . to sentence [Petitioner] to a harsher sentence." (<u>Id.</u> at p. 8). Lastly, Petitioner argues that his

---

[1] As a threshold matter, the Court finds that the present Petition was filed within the one-year statute of limitations established by the AEDPA. The Minnesota Supreme Court denied Petitioner's request for further review on April 27, 2022, and the Minnesota Court of Appeals entered judgment on June 1, 2022. <u>Walker</u>, No. A21-256, Order (Minn. Apr. 27, 2022); <u>Walker</u>, No. A21-256, Judgment (Minn. Ct. App. June 1, 2022). Under United States Supreme Court Rule 13.1, "[a] petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review." Therefore, the limitations period began to run on August 30, 2022, (ninety days after the Minnesota Court of Appeals entered judgment on June 1, 2022). <u>See</u> Sup. Ct. R. 13.1; <u>see also</u> <u>DiMartino v. Titus</u>, 19-cv-0427 (JRT/SER), 2019 WL 2360900, at *5 n.4 (D. Minn. Apr. 17, 2019), <u>report and recommendation adopted by</u> 2019 WL 2357047 (D. Minn. June 4, 2019). Petitioner filed his present petition for writ of habeas corpus on June 16, 2022, within the one-year limitations period under the AEDPA. (<u>See</u> Pet., [Docket No. 1]).

[2] The Court is required to liberally construe the filings of <u>pro se</u> parties. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) ("A document filed pro se is to be liberally construed[.]") (internal citation and quotation marks omitted)). This includes <u>pro se</u> habeas petitions. <u>Waters v. Rios</u>, No. 17-cv-1367 (SRN/DTS), 2017 WL 3668761, at *2 (D. Minn. Aug. 23, 2017). A <u>pro se</u> litigant, however, "is not excused from failing to comply with substantive and procedural law." <u>Burgs v. Sissel</u>, 745 F.2d 526, 528 (8th Cir. 1984).

guilty plea was "not accurate, voluntary, and intelligent" because he was either incompetent or "he denied knowing that he possessed a controlled substance and denied intending to sell it" at the plea hearing; and he was coerced into accepting the plea agreement by his defense counsel.  (Id. at p. 10).

### A.  Grounds One and Two: Ineffective Assistance of Counsel Claims

The Court must first consider the threshold question of whether Petitioner has exhausted his state court remedies regarding his ineffective assistance of counsel claims. The Court's review of the record demonstrates that Petitioner has failed to present his ineffective assistance of counsel claims to the state courts, and therefore, he is now time-barred from doing so. Consequently, Petitioner's present ineffective assistance of counsel claims are procedurally defaulted.

As discussed above, a state prisoner seeking federal habeas relief must have first exhausted his state court remedies:

> [t]o exhaust available state remedies, "the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Fair presentment requires that prisoner to "refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." . . . Further, a federal claim has not been fairly presented to a state court "if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."

Foster v. Fabian, No. 7-cv-4317 (JRT/JJG), 2009 WL 921063, *3 (D. Minn. March 31, 2009) (citations omitted); see Baldwin, 541 U.S. at 32 (holding that in order to indicate the federal nature of a claim, a state-court litigant may cite federal law, cite a case deciding a similar claim on federal grounds, or simply "label[] the claim 'federal'"); McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997); Myre v. State of Ia., 53 F.3d 199, 200-01 (8th Cir. 1995). "In order to present a habeas claim to the state court, a prisoner must 'fairly present' not only the facts but also the substance of

his federal habeas corpus claim." <u>Abdullah v. Groose</u>, 75 F.3d 408, 411 (8th Cir. 1996). "[P]resenting a claim to the state courts that is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." <u>Id.</u> at 412.

In his petition for review by the Minnesota Supreme Court, Petitioner raised two issues:

I.      Is sentencing hearing where the prosecutor employs inflammatory, irrelevant language that is distinctly racially coded sufficient to ensure due process?

<u>Ruling Below</u>: The court of appeals determined that the prosecutor's repeated use of the term "gang-banger" to describe petitioner was concerning, had "racial overtones," and "served no legitimate purpose," but nevertheless concluded it did not constitute plain error.

II.     Under what circumstances is a plea procured through leading questions sufficiently accurate?

<u>Ruling Below</u>: The court of appeals determined that the petitioner's plea was secured using leading questions after he refused to admit certain facts and minimized his culpability, but nevertheless concluded it was accurate without indicating why.

(See Pet. for Review of Decision of Court of Appeals, Respondent's Ex. 10, [Docket No. 13]). This petition for review by the Minnesota Supreme Court does <u>not</u> make any reference to any ineffective assistance of counsel claim. (<u>See</u> <u>Id.</u>).

Therefore, this Court concludes that Petitioner did not "fairly present" his present ineffective assistance of counsel claims to all available Minnesota state courts, and as a result, he has not adequately exhausted the available Minnesota state-court remedies.

If a petition contains claims that have not been fairly presented, the court must then determine if those claims are unexhausted or procedurally defaulted. A claim is unexhausted if it has not been fairly presented in one complete round of the state's established appellate review process, but the petitioner has the right, under state law, to raise the claim by any available procedure. A constitutional claim is procedurally defaulted if the state prisoner fails to exhaust his state court remedies with respect to that claim and the state courts will no longer review it because an independent and adequate state procedural rule precludes further litigation of the claim.

Foster, 2009 WL 921063, at *3 (citations omitted).

Petitioner can no longer seek review by the Minnesota Supreme Court of his ineffective assistance of counsel claims. In Knaffla, 243 N.W.2d 737 (Minn. 1976), the Minnesota Supreme Court held that when an issue is or could have been litigated on direct appeal, it may not be brought in a subsequent, collateral appeal. Here, Petitioner's ineffective assistance of counsel claims could have been raised in his petition for review by the Minnesota Supreme Court. Therefore, these claims may not now be raised in any subsequent state appeal. Accordingly, Petitioner's ineffective assistance of counsel claims are procedurally defaulted.[3]

Because Petitioner's ineffective assistance of counsel claims are procedurally defaulted, the Court can only entertain the merits of those claims "under two limited circumstances: (1) if the petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged violation of federal law; or (2) if the court's failure to consider the claim will result in a fundamental miscarriage of justice." Kindred v. Titus, No. 17-cv-620 (SRN/HB), 2017 WL 6987990, *3 (D. Minn. Dec. 27, 2017) (citing McCall, 114 F.3d at 758); see Coleman, 501 U.S. at 750 (setting forth circumstances under which federal habeas review of procedurally defaulted claims is available).

In the present case, Petitioner has articulated neither the cause for his procedural default nor actual prejudice resulting from any alleged violation of Federal law. Therefore, Petitioner has failed to show "cause and prejudice" sufficient to overcome the procedural default of his

---

[3] When a prisoner fails to exhaust his state court remedies for a claim, and state procedural rules preclude any attempt to satisfy the exhaustion requirement for that claim, then the claim is not unexhausted, but rather "procedurally defaulted." Coleman, 501 U.S. at 750. Thus, if a state court remedy remains, courts classify previously unraised habeas claim as "unexhausted," but if state court remedies are no longer available, then courts consider the claim "procedurally defaulted." Armstrong v. Iowa, 418 F.3d 924, 926 (8th Cir. 2005); Gustafson v. State, 754 N.W.2d 343, 348 (Minn. 2008) ("When a 'direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief.'").

ineffective assistance of counsel claims. With respect to the other avenue for overcoming procedural default, Petitioner has not argued that a miscarriage of justice will occur if this Court does not review the merits of his ineffective assistance of counsel claims.

> The miscarriage of justice exception is only available to a petitioner who has demonstrated that a constitutional violation has probably resulted in the conviction of an innocent person. In order to establish this exception, the petitioner must show, "based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"

Fraction v. Minn., 678 F. Supp. 2d 908, 918 (D. Minn. 2008) (citations omitted). In the case now presently before this Court, Petitioner has not proffered any new evidence, nor does he assert actual innocence. Petitioner does not argue in the present action that he is factually innocent.

In sum, there is nothing in the record that establishes cause and/or prejudice to excuse the default or establishes that failure to consider the claim by this Court will result in a fundamental miscarriage of justice. Thus, the procedural default precludes this Court from considering the merits of Petitioner's ineffective assistance of counsel claims.

Therefore, the Court recommends that Petitioner's ineffective assistance of counsel claims asserted as Grounds One and Two of the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED** and that it be **dismissed with prejudice**.[4]

## B. Ground Three: Prosecutorial Misconduct Claim

In Ground Three, Petitioner contends that the prosecutor engaged in "racial stereo-type discrimination in a clear violation" of Petitioner's due process rights under "U.S. and Minn. 5th Amend. Const." (Mem. in Support, [Docket No. 5], at p. 20). As set forth above, to satisfy the exhaustion of state court remedies requirement, a prisoner must fairly present all of his federal law

---

[4] See Armstrong v. Ia., 418 F.3d 924, 926–27 (8th Cir. 2005) (finding that dismissal with prejudice is appropriate where federal habeas petitioner is procedurally barred from raising unexhausted claims in state court); Bush v. Smith, No. 17-cv-3129 (WMW/SER), 2018 WL 542693, *1–2 (D. Minn. Jan. 24, 2018) (dismissing with prejudice habeas claims which were procedurally defaulted).

claims to the <u>highest available state court</u> before seeking habeas corpus relief in federal court. <u>O'Sullivan</u>, 526 U.S. at 845; <u>Duncan v. Henry</u>, 513 U.S. 364, 365-66 (1995); <u>McCall</u>, 114 F.3d at 757. "A petitioner must present both the factual and legal premises of his claims to the state courts in order to exhaust the claims properly." <u>Vang v. Roy</u>, 17-cv-71 (JNE/TNL), 2017 WL 4542898, at *4 (D. Minn. Sept. 11, 2017) (quoting <u>Dansby v. Hobbs</u>, 766 F.3d 809, 823 (8th Cir. 2014)).

While Petitioner articulated claims to the state courts concerning prosecutorial misconduct, which is similar to the claims now articulated in the present Petition before the Court, Petitioner never first presented his prosecutorial misconduct claim as a specific <u>federal</u> issue to the Minnesota state courts. Specifically, Petitioner expressly articulated this claim as a <u>state</u> law issue in his appellate brief to the Minnesota Court of Appeals, citing only Minnesota state rules and case law. Tellingly, the Minnesota Court of Appeals addressed Petitioner's claims in the context of Minnesota state law. Both Petitioner's state court appellate briefing and the Minnesota Court of Appeals' decision focused their analyses on Minnesota state statutes, the interpretation thereof, and precedent set by Minnesota state case law.

Thereafter, Petitioner again explicitly framed his prosecutorial misconduct claim as a <u>state</u> law issue in his Petition for Review to the Minnesota Supreme Court, arguing that "this is an important case because prosecutors must know the bounds of proper argument and whether racial appeals are reversible error to ensure a fair process." (Pet. for Review of Court of Appeals' Decision, Respondent's Ex. 10, [Docket No. 13], at pp. 7-8). Petitioner referred to the prosecutorial misconduct issue as an opportunity for the Minnesota Supreme Court to "consider[] whether . . . injecting race into a sentencing proceeding pollutes that sentencing proceeding and mandates a new hearing." (<u>Id.</u>).

Simply put, the Petition for Review considered by the Minnesota Supreme Court did not in any way indicate that Petitioner sought review of a decision on a <u>federal</u> claim of prosecutorial misconduct in violation of his right under the Fifth Amendment to the United States Constitution. This Court may <u>not</u> read a federal basis into Petitioner's claim where it is it not explicitly referenced.  See <u>Sather v. Dooly</u>, No. 10-cv-3080 (JRT/JJG), 2011 WL 7615097, at *4 (D. Minn. Sept. 13, 2011) ("[A] broad appeal to 'due process' is not sufficient, but explicit reference to the 'United States Constitution or federal case law' is required.").

Accordingly, Petitioner has failed to demonstrate that adjudication in the state courts either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Consequently, Petitioner has failed to exhaust his state court remedies and is not entitled to habeas relief pursuant to 28 U.S.C. § 2254(d).  See <u>Miller v. Minnesota</u>, 2011 WL 5570697 (D. Minn. Nov. 16, 2011).

As already established, when a petitioner fails to exhaust a claim, federal courts review whether the unexhausted claim is procedurally defaulted, i.e., whether state law bars the claim from now being heard in state court. <u>McCall</u>, 114 F.3d at 757.  The state procedural rule preventing relief must be well established and regularly followed for a claim to be considered procedurally defaulted.  <u>Oxford v. Delo</u>, 59 F.3d 741, 744 (8th Cir. 1995).  Minnesota courts have "consistently held that a claim raised on direct appeal will not be considered upon a subsequent petition for post conviction relief." <u>Roby v. State</u>, 521 N.W.2d 482, 484 (Minn. 1995) (citing <u>Knaffla</u>, 243 N.W.2d at 741).  Further, Minnesota precludes relief for "all claims known but not raised by the defendant . . ." at the time of the direct appeal.  <u>Carney v. State</u>, 692 N.W.2d 888, 891 (Minn. 2005).

In the present Petition, Petitioner's claim concerning prosecutorial misconduct is, as discussed, similar to the claim raised on direct appeal to the Minnesota Court of Appeals and the Minnesota Supreme Court. As in <u>Miller</u>, <u>supra</u>, because Petitioner has demonstrated that he was aware of this prosecutorial misconduct issue at the time of his direct state court appeal, he had every opportunity to frame and raise the issue then as violations of federal constitutional law, as well as, state law on direct appeal in the state courts. Accordingly, Petitioner now has no further recourse under Minnesota law and procedure. The Court finds Petitioner's claims are therefore procedurally defaulted.[5]

Therefore, the Court recommends that Petitioner's prosecutorial misconduct claim asserted as Ground Three of the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED** and that it be **dismissed with prejudice**.

### C. Ground Four: Invalid Guilty Plea Claim

Liberally construing his claims, Petitioner contends that his guilty plea was "not accurate, voluntary, and intelligent" under the due process clause because: 1) he was either not competent, and therefore, did not understand the elements of the offense he was pleading to; or 2) he expressly denied possessing or selling controlled substances at his plea hearing. (Pet., [Docket No. 1], at pp. 5). Petitioner also asserts that his guilty plea was invalid because he was "coerced" to plead guilty by promises from his defense attorney that "she . . . would get him . . . a sentence of 105 months." (<u>Id.</u> at p. 10).

Although Petitioner did fairly present invalid guilty plea claims in the state courts, <u>see</u> <u>Walker</u>, 2022 WL 274732, at *2-5, the invalid guilty plea claims raised in his habeas petition differs in substance from the claims he raised on direct appeal. In appealing his conviction to the

---

[5] <u>See</u>, <u>supra</u>, fn. 3.

Minnesota Court of Appeals, Petitioner argued that his "guilty plea [was] constitutionally invalid because it [was] not accurate" due to his "statements . . . negat[ing] two essential elements of the offense in question": 1) "knowledge that the substance in his possession was a controlled substance"; and 2) "intent to sell that substance." Id. at *3. In doing so, Petitioner argued that a proper factual basis was not established at his plea hearing because any statements of guilt made by Petitioner were the result of the prosecutor's leading questions, and therefore, his plea was not rehabilitated. (See Appellant's Brief, [Docket No. 9-5] at pp. 15-18). The Minnesota Court of Appeals rejected this argument and affirmed Petitioner's conviction. Walker, 2022 WL 274732, at *6.

Thereafter, in his petition for review at the Minnesota Supreme Court, Petitioner's counsel framed his invalid guilty plea issue as follows: Under what circumstances is a plea procured through leading questions sufficiently accurate? (Pet. for Review of Court of Appeals' Decision, Ex. 10, [Docket No. 13], at pp. 10-11). Thus, Petitioner's entire argument to the Minnesota Supreme Court, with respect to his guilty plea, was premised on his belief that the Court should accept review of the case to "establish criteria for determining accuracy when pleas are procured through leading questions." (Id. at p. 11). It is clear, therefore, that the issue raised in the state appellate courts was whether Petitioner's guilty plea was invalid because the factual basis for that guilty plea was elicited through leading questions and not more precisely admitted by Petitioner at the plea hearing.

Here, however, it is apparent from Petitioner's submissions to the Court that his invalid guilty plea claim is no longer based on the issue of his guilty plea being elicited through leading questions, but rather on Petitioner's belief that he: 1) was not competent at the time he accepted

the plea agreement; 2) denied possessing or selling controlled substances at the plea hearing;[6] and 3) was coerced to enter into the plea agreement by his defense counsel on a promise for a lesser sentence.    Therefore, the Court finds that Petitioner did not fairly present these claims to the Minnesota Supreme Court.    (See generally Pet. for Review of Court of Appeals' Decision, Respondent's Ex. 10, [Docket No. 13]).

As noted above, the Minnesota Supreme Court has held that when an issue is or could have been litigated on direct appeal, it may not be brought in a subsequent, collateral appeal.  Because Petitioner's claims challenging his guilty plea were not presented in his previous petition for further review by the Minnesota Supreme Court, it may not again be raised in any subsequent state appeal.  (See generally Pet. for Review of Court of Appeals' Decision, Respondent's Ex. 10, [Docket No. 13]); see also Knaffla, 243 N.W.2d at 741.

Accordingly, Petitioner's claims challenging his guilty plea on due process grounds asserted as Ground Three in the present Petition are also procedurally defaulted. See Id.; see also Coleman, 501 U.S. at 750.

Finally, Petitioner has not articulated any cause, prejudice, or that he meets the "fundamental miscarriage of justice" exception.  (See Pet., [Docket No. 1]; Mem. in Support, [Docket No. 5]); see also Coleman, 501 U.S. at 753; Kindred, 2017 WL 6987990, at *3.  Therefore, Petitioner's procedural default of Ground Three of the Petition cannot be overcome, and this Court is precluded from adjudicating these claims on the merits.

---

[6] To the extent this invalid guilty claim now articulated in the present Petition before the Court is liberally construed as being similar to the invalid guilty claim raised in the Minnesota Supreme Court, similar to Petitioner's prosecutorial misconduct claim, Petitioner never first presented his invalid guilty claim below as a specific federal law issue to the Minnesota state courts.  As discussed above, this Court may not read a federal basis into Petitioner's claim where it was not explicitly referenced in the state appellate or post-conviction proceedings below.  See Sather, 2011 WL 7615097, at *4.

Accordingly, the Court recommends that Petitioner's claim challenging his guilty plea on due process grounds asserted as Ground Four of the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED** and that it be **dismissed with prejudice**.

## IV.    Certificate of Appealability

One further issue merits discussion: A habeas corpus petitioner seeking relief pursuant to § 2254 cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability (hereinafter "COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. Daniel, 529 U.S. 473, 484 (2000).

In this case, the Court finds that it is highly unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Petitioner's claims any differently than they have been decided here. Petitioner has not identified, and the Court cannot independently discern, anything novel, noteworthy, or worrisome about this case that warrants further appellate review. It is therefore recommended that Petitioner not be granted a COA in this matter. See, e.g., Samuelson v. Roy, No. 13-cv-3025 (PAM/LIB), 2014 WL 2480171 (D. Minn. May 28, 2014).

**V.    Conclusion**

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED THAT**:

1. The Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED;**

2. This action be **DISMISSED with prejudice**; and

3. That Petitioner not be granted a Certificate of Appealability.

Dated: October 26, 2022                              s/ Leo I. Brisbois
                                                     Hon. Leo I. Brisbois
                                                     United States Magistrate Judge


**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).